UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| Babinski Properties and Donald Babinski, Personally and as Executor of the Estate of John Babinski, | ) ) ) | Civil File No.  09-cv-04192-KES |
| Plaintiffs, | ) ) ) | **DEFENDANT UNION INSURANCE COMPANY'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| vs. | ) ) | |
| Union Insurance Company, | ) ) | |
| Defendant. | ) | |

COMES NOW, defendant Union Insurance Company ("Union") in the above-entitled matter and respectfully submits Union's Brief in Opposition to Plaintiffs' Motion For Partial Summary Judgment.

## INTRODUCTION

Plaintiffs' motion for partial summary judgment seeks a ruling from this Court that Union's cross suits exclusion and household drop-down exclusion do not apply to the wrongful death claim brought by Kathi Babinski's heirs and next of kin.  While the determination of whether the cross suits exclusion applies should be a matter of straightforward insurance contract interpretation, plaintiffs attempt to convince this Court that it should adopt an interpretation wholly unsupported by the plain language of the exclusion and any legal authority.  Plaintiffs also attempt to convince this Court that contrary to the record evidence in the Babinski v. American Family lawsuit, the 8th Circuit Court of Appeal's decision in that case did not determine whether the household drop-down exclusion applied to the wrongful death lawsuit brought by Kathi Babinski's heirs and next of kin.  Plaintiffs' motion misconstrues the plain language of the cross suits exclusion and mischaracterizes the decision by the 8th Circuit, and should be denied.

Union's cross suits exclusion bars insurance for "bodily injury" caused by one named insured against another named insured. The term "bodily injury" is defined by the Union policy to include death. The parties agree that both Kathi and John Babinski were named insureds under the Union policy. Because the wrongful death claim is a claim for Kathi Babinski's death caused by John Babinski, both named insureds under the Union policy, there is no excess auto coverage available under the Union policy.

Plaintiffs' motion seeks to avoid application of Union's cross suits exclusion by arguing that the wrongful death claim brought by Kathi Babinski's heirs did not seek damages for bodily injury to Kathi Babinski but instead sought pecuniary loss. This argument, however, ignores the exclusion as a whole and Union's definition of "bodily injury" which includes death. It simply cannot be disputed that the wrongful death claim was for the death of Kathi Babinski. Without her death, the wrongful death claim would never have existed. Plaintiffs' focus on the type of the damages sought in the wrongful death claim is irrelevant to whether the exclusion applies.

Plaintiffs also argue, without citation to any supporting legal authority, that because Kathi Babinski's heirs and next of kin are not named insureds under the Union policy the cross suits exclusion does not apply. The fatal flaw with this argument is that it incorrectly assumes that application of the exclusion is somehow dependent on whether a named insured brings the wrongful death lawsuit. A review of the plain language of the exclusion clearly establishes that it is not so limited. As long as there is a claim for the death caused by one named insured against another named insured the exclusion applies.

Relative to whether the household drop-down exclusion applies, the 8th Circuit Court of Appeals in Babinski v. American Family, 569 F.3d 349 (8th Cir. 2009), is dispositive of that issue. In that case, the 8th Circuit determined that the household drop-down exclusion barred

coverage above $30,000 relative to the wrongful death claim brought by Kathi Babinski's heirs and next of kin. Because Union issued follow-form excess auto coverage, to the extent the American Family policy qualifies as "underlying insurance"[1], the household exclusion is deemed incorporated into the Union policy. Principles of res judicata, collateral estoppel and judicial estoppel therefore prevent plaintiffs from relitigating the applicability of this exclusion in this case. Accordingly, there is no excess coverage available under the Union policy because at least $30,000 was already paid by American Family to resolve the wrongful death claim.

In an effort to avoid the binding effect of the 8th Circuit decision, plaintiffs disingenuously argue that the 8th Circuit only ruled on whether American Family's household exclusion was enforceable under Minnesota law and not whether it applied to the wrongful death claim brought by Kathi Babinski's heirs. Not only does plaintiffs' argument run contrary to record in that case but it is also belied by plaintiffs' own complaint in that action which expressly sought a court ruling on whether American Family's household exclusion applied to the claim brought by "Kathi Babinski's heirs." Plaintiffs attempt to get a second bit at the apple relative to the household drop-down exclusion must be stopped short.

Finally, plaintiffs' motion for partial summary judgment inexplicably fails to address Union's argument that its coverage is not excess to the American Family policy because the American Family policy does not constitute proper "underlying insurance." Plaintiffs' motion also fails to address Union's position that its coverage cannot attach until $1 million dollars has been paid. As set forth in Union's motion for summary judgment, both of these arguments can be decided as a matter of law and operate to bar recovery under the Union policy for the wrongful death claim brought by Kathi Babinski's heirs and next of kin.

---

[1] Union disputes that the American Family policy qualifies as "underlying insurance." This issue was fully briefed

Accordingly, plaintiffs' motion for partial summary judgment should be denied and Union's motion for summary judgment should be granted. This Court should declare that there is no excess coverage available under the Union policy for the wrongful death claim brought by Kathi Babinski's heirs and next of kin and dismiss plaintiffs' complaint with prejudice.

## UNION'S RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS

See Union's Response to Plaintiffs' Statement of Undisputed Facts filed contemporaneously with this brief.

Union also objects to plaintiffs' late filing and service of the Affidavit of Donald Babinski which was filed with this Court on February 1, 2011 (Affidavit of Babinski, Doc. no. 48), nearly two weeks after the Court's dispositive motion deadline of January 18, 2011. (Scheduling Order, Doc. no. 14 at p. 3) ("[a]ll motions, other than motions in limine, together with supporting briefs, shall be filed and served on or before January 18, 2011"). Plaintiffs have not offered any explanation for this untimely filing and never sought to modify the scheduling order to allow for this late filing. (Id. at p. 4) ("The schedule herein may be modified by court order only upon formal motion and upon a showing of good cause."). It is Union's position that this Affidavit should be stricken from the record in this case.

## UNION'S STATEMENT OF UNDISPUTED FACTS

**I.     The December 10, 2006 Motor Vehicle Accident.**

On December 10, 2006, John Babinski and his wife, Kathi Babinski, were killed in a single-car accident that occurred in Minnesota. (Affidavit of Michelle Mitchell ("Mitchell Aff."), Exhibit ("Exh.") A, Donald Babinski, in his personal capacity and as personal representative of the Estate of John Babinski v. American Family Insurance Group, 569 F.3d 349, 351 (8th Cir.

---

in Union's motion for summary judgment.

2009)).[2]  At the time of the accident, John Babinski was driving a Minnesota-registered 2004 Dodge Ram owned by Donald Babinski's company named Janice's Estates, a Minnesota partnership that owns and operates real estate in Minnesota. (Id., pp. 350-51). Kathi Babinski was a passenger in that vehicle. (Id., p. 351). Kathi and John resided together in the same Minnesota household at the time of the accident. (Id.).

## II. The Minnesota Coverage Action: Donald Babinski, in his personal capacity and as personal representative of the Estate of John Babinski v. American Family Insurance Group.

Early in 2007, Kathi Babinski's heirs and next of kin informed Donald Babinski that they intended to bring a wrongful death lawsuit against John's estate. (Id., p. 351). Donald Babinski was John Babinski's father and the personal representative of his estate. (Id.).

Donald Babinski, in turn, provided notice of the wrongful death claim to American Family. (Id.). American Family had issued a personal automobile insurance policy to Donald Babinski which provided primary liability coverage for the vehicle driven by John Babinski at the time of the accident. (Id., pp. 350-51; Mitchell Aff., Exh. B, American Family Policy (BAB0365-BAB0376)).

On June 21, 2007, American Family advised Donald Babinski that it intended to bring an insurance coverage action in South Dakota to determine the extent of liability coverage under its policy relative to the wrongful death claim. (Mitchell Aff., Exh. A, p. 351). Before it was able to do so, Donald Babinski filed a lawsuit in Minnesota federal district court against American Family seeking a court declaration that the American Family policy provides up to $1,000,000 in liability coverage relative to the wrongful death claim by Kathi Babinski's heirs and next of kin.

---

[2] All of the exhibits cited in Union's Statement Of Undisputed Facts were filed with Union's Motion For Partial Summary Judgment on January 18, 2011. For judicial economy purposes and because these exhibits are already part of the record, Union will not re-file those documents again with this Response.

(Mitchell Aff., Exh. A, pp. 350-51; Mitchell Aff., Exh. B, Babinski's Minnesota Complaint at pp. 3-4 (BAB0362-63)).  Babinski's complaint stated in relevant part as follows:

6. On December 10, 2006, while the Policy was still effective, John Babinski was driving the Vehicle and was involved in a collision which resulted in the death of John Babinski and his wife, Kathi Babinski.

7. The collision took place in Crow Wing County, Minnesota, the county in which both John Babinski and Kathi Babinski resided prior to their death. Both the Estate of Kathi Babinski and John Babinski are being probated in Crow Wing County, Minnesota.

8. Plaintiffs have been notified that Kathi Babinski's heirs have engaged an attorney to commence litigation and/or settle a wrongful death claim against the Estate of John Babinski based on the December 10, 2006 collision.

9. Plaintiffs notified American Family of the potential wrongful death claim against the Estate of John Babinski and were subsequently informed by American Family that it would not provide the $1,000,000 coverage based on a "household exclusion" provision in the policy and, instead, would only provide a statutory minimum amount of either $25,000 or $30,000.

10. The policy also requires American Family to defend Plaintiffs against any suit or claims asserted.  To date, American Family has not retained counsel to defend Plaintiffs from claims asserted and has not indicated an intention to do so.

*  *  *

13. Plaintiffs are entitled to a declaration that they are entitled to coverage of up to $1,000,000 from American Family under the Policy and are entitled to have American Family defend them against any suits and claims related to the facts detailed in paragraphs 6 through 8.

(Id., p. 4 (BAB0362-63)).

American Family responded by arguing that its household drop-down exclusion barred liability coverage above the minimum amount required under state law – which under Minnesota law was $30,000.  (Mitchell Aff., Exh. A, p. 351; Mitchell Aff., Exh. D, American Family's Answer at pp. 3-4).  The household drop-down exclusion reads as follows:

This coverage does not apply to ...

10.    Bodily injury to:

a.      Any person injured while operating your insured car;

b.      You or any person related to you and residing in your household; or

c.      <u>Any person related to the operator and residing in the household of the operator.</u>

<u>This exclusion applies only to the extent the limits of liability of this policy exceed the limits of liability required by law.</u>

(Mitchell Aff., Exh. A, p. 351; Mitchell Aff., Exh. B, American Family policy at p. 9 (BAB0368))(emphasis added).

The American Family policy defines the term "bodily injury" to include the "death of any person." (Mitchell Aff., Exh. B, American Family policy at p. 8 (BAB0367)).

The parties cross-moved for summary judgment seeking a court declaration as to whether the household drop-down exclusion barred coverage for the wrongful death claim above Minnesota's statutory minimum limit of $30,000. (Mitchell Aff., Exh. A, pp. 350-51). Plaintiffs also moved to certify to the Minnesota Supreme Court the question of whether the household drop-down exclusion was per se unenforceable under Minnesota law. (Id. at 351). The district court granted summary judgment in favor of plaintiffs, holding that the exclusion did not apply. (Id.). The court did not grant plaintiffs' motion for certification. (Id.).

American Family appealed the court's coverage decision to the 8th Circuit Court of Appeals. (Id.).  In their appellate brief, plaintiffs argued that the district court properly determined that American Family's household drop-down exclusion was unenforceable and thus did not apply to the wrongful death claim. (Mitchell Aff., Exh. C, Babinski's Appellate Brief).

On June 18, 2009, the 8th Circuit issued a published opinion, <u>Donald Babinski, in his personal capacity and as personal representative of the Estate of John Babinski v. American Family Insurance Group</u>, 569 F.3d 349 (8th Cir. 2009), which expressly reversed the district court

and held that the American Family household drop-down exclusion was clear and unambiguous, enforceable under Minnesota law, and applied to bar liability coverage above Minnesota's minimum statutory limits of $30,000 relative to the wrongful death claim by Kathi Babinski's heirs and next of kin. (Mitchell Aff., Exh. A, pp. 352-54).

Plaintiffs, however, contend that the 8th Circuit decision did not apply to the claims by Kathi Babinski's heirs. This is flatly contradicted by the decision itself which is replete with mentions of the heirs' claim and lawsuit:

> Early in 2007, Kathi's <u>heirs</u> informed Babinski that they were hiring an attorney and preparing to bring a wrongful death claim against John's estate. Babinski notified American Family of the <u>heirs'</u> intentions. On April 4, 2007, American Family acknowledged the <u>heirs'</u> potential claim and its duty under the Policy to defend Babinski in his capacity as personal representative of John's estate. On June 21, 2007, American Family advised Babinski that it planned to bring a declaratory judgment action in South Dakota to determine the extent of liability coverage available under the Policy. Before American Family executed service in South Dakota, Babinski filed the present action for declaratory judgment in the United States District Court for the District of Minnesota on July 17, 2007. Kathi's <u>heirs</u> commenced their wrongful death claim against John's estate in Hennepin County, Minnesota, in November 2007.
>
> * * *
>
> Donald Babinski ("Babinski") filed this diversity action seeking a declaratory judgment that the automobile insurance policy (the "Policy") he purchased from American Family Insurance Group ("American Family") provides up to $1,000,000 in liability coverage in a <u>wrongful death suit</u> brought against the estate of his son, John Babinski ("John"), of which Babinski is the personal representative. American Family responded by arguing that the Policy's household drop-down exclusion limits the liability coverage available in the <u>wrongful death suit</u> to the minimum amount required under state law. Both parties moved for summary judgment. The district court granted summary judgment for Babinski, held that the Policy obligates American Family to indemnify Babinski up to the $1,000,000 policy limit, and awarded attorney's fees. For the reasons discussed below, we reverse.

(<u>Id</u>. at 351)(emphasis added).

In its decision, the 8th Circuit applied Minnesota law to the interpretation of the American Family insurance policy and determined that "[t]he parties agree that Minnesota law applies in this case." (Id. at 352, n. 2). The court's finding was consistent with plaintiffs' appellate brief filed in that case which stated that "it is now undisputed that Minnesota law applies." (Mitchell Aff., Exh. C, p. 11). The 8th Circuit also ruled that it would not certify the question of whether the exclusion is per se unenforceable under Minnesota law to the Minnesota Supreme Court. (Id. at 354).

The case was remanded back to the Minnesota district court with instructions to enter summary judgment in favor of American Family. (Mitchell Aff., Exh. A, p. 354). On October 9, 2009, the district court entered summary judgment in favor of American Family. (Mitchell Aff., Exh. E, Judgment).

## III.    The Underlying Wrongful Death Lawsuit Filed In Minnesota State Court.

As discussed in the 8th Circuit's opinion, Kathi Babinski's heirs and next of kin filed a wrongful death lawsuit in Minnesota state court against plaintiff Donald Babinski, individually, and as personal representative of John Babinski's estate. (Mitchell Aff., Exhs. F and F1, Complaint and First Amended Complaint). Kathi Babinski's heirs and next of kin consisted of her three adult sons, none of whom resided in South Dakota. (Mitchell Aff., Exh. G, Certified Application). Kathi Babinski's son and personal representative of her estate, Ryan Dee, resides in Minnesota. (Id.). Her other sons, John Dee and Matthew Dee, reside in Minnesota and Nebraska, respectively. (Id.).

In December of 2008, while the decision from the 8th Circuit was pending, the parties involved in the wrongful death lawsuit and the Minnesota coverage litigation participated in a mediation which resulted in a $650,000 combined settlement of the wrongful death action.

(Mitchell Aff., Exh. H, Wrongful Death Settlement Agreement; see also Doc. no. 23-1 at pp. 8-11).  The payment terms of the settlement agreement were contingent upon the outcome of the decision from the 8th Circuit. (Mitchell Aff., Exh. H).  The release expressly stated that Kathi's heirs and next of kin discharge Donald Babinski, the estate of John Babinski, and Janice's Estates, from any and all further liability for the death of Kathi Babinski, including all claims and causes of action based on Minnesota's Wrongful Death Statute, MSA 573.02. (Mitchell Aff., Exh. I, Release).  A stipulation of dismissal with prejudice, order for judgment and judgment was entered in the wrongful death action. (Mitchell Aff., Exh. J, Certified Judgment).  The estate of Kathi Babinski never brought a separate lawsuit against the estate of John Babinski.

## IV.   Union Issued Excess Follow-Form Automobile Liability Coverage.

The Union policy at issue in this case is a commercial umbrella liability policy, policy number DXS 2400607-24, which was issued to Babinski Properties et al. for the policy period November 16, 2006 to November 16, 2007. (Ken Baker Aff., Exh. A, Union policy).

The insuring agreement to Union's umbrella coverage provides in part as follows:

A.   INSURING AGREEMENT

1.   We will pay the **ultimate net loss** the insured becomes legally obligated to pay as damages because of **bodily injury, property damage, personal injury** or **advertising injury** to which this insurance applies.  No other obligations or liability to pay sums or perform acts or services is covered unless explicitly provided for under the SUPPLEMENTARY PAYMENTS or DEFENSE AND SETTLEMENT sections.  This insurance applies to **bodily injury, property damage, personal injury** or **advertising injury** which is caused by an occurrence during the policy period and which takes place anywhere in the world.  Suit may be brought anywhere in the world.

\* \* \*

10

(Baker Aff., Exh. A, p. 21 (AI CU 01 05 02 at p. 1[3])).

It is undisputed that John Babinski and Kathi Babinski were named insureds under Union's policy pursuant to the policy's Personal Umbrella Endorsement which states, in relevant part:

### PERSONAL UMBRELLA ENDORSEMENT

It is agreed that, subject to the definitions, exclusions and conditions of the policy to which this is attached, and as stated in this Endorsement, the Company agrees to pay on your behalf the Personal Named Insured(s) listed below for all sums which the Insured(s) shall be legally obligated to pay as damages and expenses, as defined in the policy by the term "Ultimate Net Loss" on account of:

1.      Bodily injuries, including death at any time resulting therefrom,

* * *

caused by or arising out of each occurrence happening anywhere in the world.

PERSONAL NAMED INSUREDS   PERSONAL UMBRELLA LIMIT

1.     John Babinski                        $10,000,000

SCHEDULE OF UNDERLYING PERSONAL INSURED – includes the coverage listed under item 5 of the policy Declarations.

* * *

As respects the insurance provided by this Endorsement, the following DEFINITIONS, EXCLUSIONS AND CONDITIONS are applicable in addition to the DEFINITIONS, EXCLUSIONS AND CONDITIONS in the policy.

a.      **Personal Named Insured means the individual or individuals named above and also includes the spouse thereof if a resident of the same household.**

(Baker Aff., Exh. A, pp. 17-18 (CU 30 32 05 02 at pp. 1-2))(underlining in original) (emphasis in bold).

---

[3] AI CU 01 05 02 represents the form no. in the Union policy, which can be found at the bottom of the page of the policy.

In this coverage action, plaintiffs seek excess auto liability coverage under Union's policy. Union's follow-form auto endorsement expressly excludes excess auto liability coverage except insofar as coverage is available in the scheduled "underlying insurance" as follows:

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

AUTOMOBILE LIABILITY – FOLLOWING FORM

> Except insofar as coverage is available to the insured in the **underlying insurance**, this policy does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance, operations, use, loading or unloading or entrustment to others of any auto.

(Baker Aff., Exh. A, p. 36 (AI CU 23 06 92)).

The Union policy defines the term "underlying insurance" as follows:

> T.    Underlying insurance means the insurance policies listed as Underlying Insurance, in the Declarations which provide the coverage and limits stated.  It includes any policies issued to renew or replace those policies during the term of this insurance that provide:
>
> > 1.    At least the same limits of insurance; and
> >
> > 2.    At least the same coverage.
>
> The coverage and limits stated in the Declarations for **Underlying Insurance**, and any renewals or replacements thereof, apply whether or not such is collectible.

(Baker Aff., Exh. A, p. 35 (AI CU 01 05 02 at p. 14)).

The Union policy's Declarations page lists the following business auto policy as underlying insurance in effect from November 16, 2006 to November 16, 2007 with a $1 million dollar combined single limit:

> Company: Owners [sic] Insurance Company
> Policy No. 42 53891501
> Business Auto
> Hired Auto

(Baker Aff., Exh. A, p. 13 (AI CD 03 01 99)).

Significantly, it is undisputed that the Auto-Owners Insurance Company business auto policy was never issued for the November 16, 2006 to November 16, 2007 policy period. (Mitchell Aff., Exh. K, Acord Cancellation Request).   Instead, Donald Babinski purchased an American Family personal automobile insurance policy for the 2006-2007 policy period which, according to the decision from the 8th Circuit, excluded coverage above $30,000 for the wrongful death claim. (Mitchell Aff., Exh. A at p. 353 and Exh. C at pp. 3 and 5).  The American Family policy was not listed on the Declarations page and did not contain the same limits and coverage as was to be provided by the Auto-Owners Insurance Company policy.  As a result, the American Family policy does not constitute proper "underlying insurance."

The Union policy contains the following cross suits exclusion which bars coverage as follows:

> THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
>
> CROSS SUITS
>
> This insurance does not apply to Bodily Injury, Property Damage, Advertising Injury or Personal Injury initiated, alleged or caused by a named insured covered by this policy against any other named insured covered by this policy.

(Baker Aff., Exh. A, p. 37 (AI CU 27 05 02)).

The Union policy defines "bodily injury" as:

> C.     Bodily injury means bodily injury, sickness, disease, shock, fright, mental injury or disability sustained by a person, including <u>death</u> resulting from any of these at any time.

(Baker Aff., Exh. A, p. 32 (AI CU 01 05 02 at p. 11))(emphasis added).

The Union policy defines "personal injury" in relevant part as:

> N.     Personal injury means any of the following acts or offenses, including damages claimed for care, loss of services or death resulting therefrom:
>
> 1.     Bodily injury, sickness, or disease sustained by a person including mental anguish, mental injury, disability or shock.

(Baker Aff., Exh. A, p. 34 (AI CU 01 05 02 at p. 13)).

It is undisputed that both John and Kathi Babinski qualified as named insureds under the Union policy. In addition, the wrongful death claim was a claim for the death of Kathi Babinski caused by John Babinski's negligence. The cross suits exclusion clearly applies to bar coverage for the wrongful death claim.

The Union policy also contains a "Maintenance of Underlying Insurance" provision which requires the insured to maintain the applicable coverage and limits for the "underlying insurance" in full effect during the 2006-2007 policy period:

J.     MAINTENANCE OF UNDERLYING INSURANCE

   1.     You will maintain the **underlying insurance** in full effect during the term of this policy without reduction of coverage or limits except for a reduction of limits solely by payment of damages because of **bodily injury, property damage, personal injury** or **advertising injury** to which the insurance applies caused by an **occurrence** which takes place during the policy period of this policy or caused by an offense which is committed during the policy period of this policy.

   2.     If you fail to maintain the **underlying insurance**, this insurance shall not replace the **underlying insurance** but shall apply as if the **underlying insurance** was valid and collectible.

      However, the first Named Insured shown in the Declarations must give us prompt written notice of any of the following:

      a.     Any **underlying insurance** which is cancelled or not renewed and not replaced;

      b.     Any replacement of any **underlying insurance**;

      c.     Any change in the limits or in the coverage of any **underlying insurance**, including but not limited to a change from occurrence to claims made coverage.

(Baker Aff., Exh. A, pp. 30-31 (AI CU 01 05 02 at pp. 9-10)).

The Declarations list the underlying auto coverage as an Auto-Owners Insurance business auto policy with a combined single limit of $1 million dollars. (Baker Aff., Exh. A, p. 13 (AI CD 03 01 99 at pp. 1-2)). On the other hand, the American Family policy in effect during the 2006-2007 policy period was a personal auto policy with only $30,000 in coverage for the wrongful death action. (Mitchell Aff., Exh. B, American Family policy). The American Family was not listed on the Declarations page for the 2006-2007 Union policy. (Baker Aff., Exh. A, p. 13).

In addition, the applications for insurance submitted to Union by Babinski's agent at Wingert Insurance failed to identify the American Family policy as underlying auto insurance. (Baker Aff., Exhs. B and C, Applications). Rather, the applications expressly represented that the Auto-Owners policy was "in force to apply as underlying insurance." (Id.). The first written notice Union received indicating that the American Family policy had been issued was on February 7, 2007, two months after the accident and three months after the Union policy had been issued. (Baker Aff., ¶4).

Union's excess auto coverage was intended to attach only after $1 million dollars had been paid by the Auto-Owners Insurance policy. By the plain language of the Maintenance of Underlying Insurance provision, Babinski's failure to maintain the same limits and coverage as listed on the Declarations page does not modify that requirement.

## ARGUMENT

As briefed in Union's motion for summary judgment, it is Union's position that the American Family policy does not constitute proper "underlying insurance" and thus Union's policy does not apply. However, if this Court determines that the American Family policy does constitute proper "underlying insurance", then Union's cross suits exclusion and the household drop-down exclusion bar coverage for the wrongful death claim. Plaintiffs' motion for partial

summary judgment asks that this Court declare that these exclusions do not apply. Significantly, Union and plaintiffs both agree that this Court can rule as a matter of law whether these exclusions apply to the wrongful death claim brought by Kathi Babinski's heirs and next of kin.

## I.   UNION'S CROSS SUITS EXCLUSION APPLIES TO BAR COVERAGE FOR THE WRONGFUL DEATH CLAIM.

### A.   Summary Of The Argument.

Plaintiffs' brief contends that the cross suits exclusion does not apply to the wrongful death claim brought by Kathi Babinski's heirs and next of kin for two reasons. First, plaintiffs argue that the exclusion does not apply because the wrongful death claim did not seek damages for bodily injury to Kathi but instead sought pecuniary loss under South Dakota's wrongful death statute. This argument lacks merit because it ignores Union's definition of "bodily injury" which is defined to include death. Because the wrongful death claim was a claim for the death of Kathi Babinski it is therefore barred by the cross suits exclusion.

Plaintiffs' position also contradicts numerous decisions nationwide which have held under similar circumstances that a wrongful death claim is dependent on the death of the insured decedent and thus falls within an exclusion which bars coverage for bodily injury to an insured. In addition, plaintiffs' argument wrongly assumes that South Dakota law on wrongful death claims is relevant to whether the exclusion applies. The record evidence establishes that the lawsuit was brought in Minnesota pursuant to Minnesota's wrongful death statute. Regardless, South Dakota law on wrongful death claims is not unique for insurance purposes.

Second, plaintiffs argue that Union's cross suits exclusion only bars claims brought by a named insured and because the heirs were not named insureds under the Union policy the exclusion thus does not apply. This argument also fails because it is flatly contradicted by the

plain language of the cross suits exclusion which does not require that a named insured bring the lawsuit for the exclusion to apply.

**B.**     **Plaintiffs' Position Ignores the Definition of "Bodily Injury" In The Union Policy Which Is Defined To Include Death.**

The plain language of Union's cross suits exclusion reads as follows:

CROSS SUITS

This insurance does not apply to Bodily Injury, Property Damage, Advertising Injury or Personal Injury initiated, alleged or caused by a named insured covered by this policy against any other named insured covered by this policy.

Significantly, the Union policy defines the term "bodily injury" as:

C. Bodily injury means bodily injury, sickness, disease, shock, fright, mental injury or disability sustained by a person, including <u>death</u> resulting from any of these at any time.

(emphasis added).

Plaintiffs acknowledge in their brief that both Kathi and John Babinski qualified as named insureds under the Union policy.  Therefore, based on the express language of the exclusion, the question then becomes whether the wrongful death claim was for "bodily injury" – defined by the Union policy to include death - caused by John Babinski against Kathi Babinski. There is no dispute that John Babinski's negligence caused the death of Kathi Babinski. Accordingly, the cross suits exclusion applies to bar insurance coverage for the wrongful death claim because the claim was for the death of Kathi Babinski.  Without her death, the wrongful death claim would not exist.

Plaintiffs contend, however, that the wrongful death claim was "not an action for bodily injury to the decedent" and therefore the exclusion does not apply.  This argument ignores the definition of "bodily injury" which includes the word "death."  Construing the exclusion as a whole, the wrongful death claim does constitute an action for the "bodily injury (death)" to Kathi

Babinski.  Plaintiffs' refusal to interpret the exclusion in its entirety runs contrary to South Dakota law on policy construction, and thus lacks any merit.  National Sun Industries, Inc., v. South Dakota Farm Bureau Ins. Co., 596 N.W.2d 45, 49 (S.D. 1999)(determining that South Dakota courts construe the language used in insurance contracts according to its plain, ordinary meaning and in reference to the policy as a whole); see also State Farm Mut. Auto. Ins. Co. v. Vostad, 520 N.W.2d 273, 275 (S.D. 1994) (citations omitted)(construing an insurance policy "according to the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending [its] operation.").

C.   **Caselaw Has Uniformly Held That Wrongful Death Claims Brought By The Heirs Of An Insured Fall Within Exclusions Which Bar Coverage For Bodily Injury To An Insured.**

While South Dakota courts have not yet analyzed whether a wrongful death claim is subject to an exclusion which bars coverage for "bodily injury (defined to include death)" to an insured, Minnesota courts and courts in several other jurisdictions have had the opportunity to do so.  Those decisions soundly reject the argument that a wrongful death claim by the heirs of an insured decedent does not fall within an exclusion which bars coverage for bodily injury to an insured.  The Minnesota decisions are particularly relevant here because, as explained below, the wrongful death claim was brought pursuant to Minnesota wrongful death law and not South Dakota law.

In Grise v. State Farm Fire and Cas. Co., Valerie Grise's daughter drowned in a pool while living with her father at his parent's home. 1995 WL 479665 *1 (Minn.App.).  Grise brought a wrongful death claim against the father.  Id.  The father tendered the claim to State Farm, the issuer of the homeowner's insurance policy.  Id.  The State Farm policy contained an exclusion which barred liability coverage for "bodily injury to you or any insured." Id.  The

daughter qualified as an insured under the policy.  Like Union's policy at issue here, the term

"bodily injury" was defined by the State Farm policy to include death.  Id.  State Farm denied

coverage for the wrongful death claim based on the exclusion and brought the insurance

coverage lawsuit.  Id.  Grise argued that because the wrongful death claim was an independent

claim belonging to the non-insured heir it should not be subject to the exclusion.  Id.  The court

rejected Grise's argument, determining that although the wrongful death action is separate cause

of action belonging to the decedent's heir, it arises out of and is derived from the bodily injury to

the insured decedent.  Id.

> A wrongful death claim is a separate cause of action belonging to the decedent's
> survivors.  See *Johnson v. Consolidated Freightways*, 420 N.W.2d 608, 613
> (Minn.1988) (wrongful death statute creates "new cause of action, the
> beneficiaries of which are third parties claiming pecuniary loss from the
> wrongdoer's act").  The wrongful death claim, however, arises out of and is
> derived from the bodily injury to the decedent.  See Minn.Stat. § 573.02, subd. 1
> (1994) (wrongful death action allowed if decedent might have maintained action
> if decedent had lived); W. Page Keeton et al., Prosser & Keeton on the Law of
> Torts, § 127 (5th ed.1984) (wrongful death action "based on injuries to others,
> derivative in nature, arising out of and dependent upon the wrong done to the
> injured person"). When the decedent was insured under a homeowner's policy, the
> wrongful death action is a claim for bodily injury to an insured and any household
> exclusion in the policy applies to preclude coverage for that claim.

Id. (emphasis in original).

As a result, the Grise court held that the fact that the wrongful death action was brought

by the heir of the insured decedent does not prevent application of the exclusion.  Id.

Similarly, in State Farm Fire and Cas. Co. v. McPhee, 336 N.W.2d 258 (Minn. 1983), the

Minnesota Supreme Court held that a wrongful death claim brought by the heirs of an insured

decedent were barred by an exclusion which barred insurance coverage for bodily injury to an

insured.  The Court did not find any significance whatsoever in the fact that the wrongful death

action was brought by the heirs of the insured decedent.

Minnesota law is in accord with decisions from several other jurisdictions which have concluded that a wrongful death claim is entirely dependent on the death of the insured decedent and therefore constitutes a claim for bodily injury to an insured. See, e.g., Cincinnati Indemnity Co. v. Martin, 85 Ohio St.3d 604, 609, 710 N.E.2d 677 (1999) (holding that the insurer did not owe coverage for a wrongful death lawsuit brought by a noninsured based on the death of an insured where the policy excluded liability coverage for claims based on bodily injury to an insured); State Farm Fire & Casualty v. Lewis, 236 Cal.Rptr. 807, 809 (Cal. Ct. App. 1987) (determining that household exclusion precluded coverage for the wrongful death claim when insured husband killed his children who were insureds under his homeowner's policy); Costello v. Nationwide Mut. Ins. Co., 795 A.2d 151, 159 (Md. Ct. App. 2002) (holding that a wrongful death claim brought by the noninsured beneficiaries was subject to the household exclusion because the claim arose out of the death of an insured); St. Paul Fire & Marine Ins. Co. v. Warren, 87 F.Supp.2d 904, 911 (E.D. Mo. 1999) (concluding that under Missouri law household exclusion clauses unambiguously "preclude coverage for wrongful death claims arising out of or derived from the bodily injury to an insured no matter who pursues the claim and regardless of who seeks coverage under a policy.").

Those cases uniformly determined that while a wrongful death claim is an independent claim which belonged to the heirs, the inescapable conclusion was that it was derived from the bodily injury and resulting death to the decedent:

> By focusing on his independent right to bring a wrongful death claim, and in ignoring the plain language of the policy, which excludes liability coverage for bodily injury to an insured, including claims resulting from his death, [the plaintiff] has lost sight of the relevant issue at hand, i.e., whether there is policy coverage that would trigger [the insured's] duty to indemnity and/or defend the insured in the wrongful death lawsuit. Even though [the plaintiff] may pursue an independent wrongful death claim (Thompson v. King [1994], 70 Ohio St.3d 176, 637 N.E.2d 917), this does not mean that he can create liability coverage where

there is none. Thus, we hold that an insurer has no duty to defend or indemnify its insured in a wrongful death lawsuit brought by a noninsured based on the death of an insured where the policy excludes liability coverage for claims based on bodily injury to an insured. Since [the plaintiffs'] wrongful death claim stems solely from an insured's 'bodily injury,' we hold that [the plaintiff's] wrongful death claim is excluded from coverage and that [the insurer] has no duty to defend or indemnify its insured.

Cincinnati Indemnity Co., 85 Ohio St.3d at 608-609, 637 N.E.2d 917.

For the same reasons, this Court should also determine that the wrongful death claim brought by Kathi Babinski's heirs and next of kin constitutes a claim for the death of a Union insured, Kathi Babinski, that was caused by a Union insured, John Babinski, and Union's cross suits exclusion bars coverage.

Finally, even under plaintiffs' flawed interpretation of the exclusion, Union's cross suits exclusion still applies to bar coverage. Plaintiffs claim that the exclusion does not apply because the wrongful death claim sought pecuniary loss rather than bodily injury damages. Critically, however, Union's cross suits exclusion also bars insurance for "personal injury" caused by one named insured against another named insured. The term "personal injury" is defined by the Union policy to include bodily injury "including damages sustained for care, loss of services or death resulting therefrom." Therefore, to the extent this Court places any significance on the fact that pecuniary loss damages were sought in the wrongful death claim, Union's cross suits exclusion still applies to bar coverage for the wrongful death claim.[4]

### D.   The Cross Suits Exclusion Applies Irrespective Of Whether The Heirs Qualified As Insureds Under The Union Policy.

---

[4] Plaintiffs suggest that because Union did not allege "personal injury claims" in its counterclaim that Union should therefore be barred from raising this argument. (Plaintiffs' Brief (Doc. no. 43) at p. 14). This is simply not true. Union expressly stated in its Counterclaim that it is "entitled to a declaration that it has no indemnification obligation to the Insureds because the Union Policy's cross suits exclusion provision precludes coverage." (Doc. no. 4 at p. 11). The term "personal injury" is included in the cross suits exclusion.

Plaintiffs' argument that the cross suits exclusion does not apply because the heirs are not insureds under Union policy is also unavailing.   Nothing in the language of the exclusion requires that an insured bring the wrongful death claim in order for it to apply.

In construing similar exclusions, courts in other jurisdictions have firmly rejected this argument.   See Grise, 1995 WL 479665 *1 (Minn.App.) ("The fact that the wrongful death trustee is not an insured under the policy does not prevent application of the household exclusion"); Warren, 87 F.Supp.2d 904, 911 (E.D.Mo.1999) (concluding that household exclusion barred coverage for wrongful death claim "no matter who pursues the claim and regardless of who seeks coverage under a policy.").   Not surprisingly, plaintiffs did not cite to any legal authority in support of this argument.   Plaintiffs' argument should be rejected out of hand.

**E.**      **South Dakota Law On Wrongful Death Claims Is Not Applicable Here.**

Plaintiffs are wrong that South Dakota law rather than Minnesota law on wrongful death claims applies here.   The wrongful death action brought by Kathi Babinski's heirs and next of kin was already brought and fully resolved in *Minnesota* state court.   None of the heirs and next of kin are South Dakota residents.   Kathi Babinski resided in Minnesota and her estate was probated in Minnesota.   The personal representative of her estate who brought the wrongful death claim is a Minnesota resident.   In addition, the heirs and next of kin of Kathi Babinski's estate have fully released the estate of John Babinski and Donald Babinski from any further liability arising out of the death of Kathi Babinski including liability under Minnesota's wrongful death statute.   The wrongful death claim has never had any ties to South Dakota or South Dakota law governing wrongful death claims.   Accordingly, plaintiffs' argument that the wrongful death

claim should be analyzed according to South Dakota wrongful death law lacks any record support, and should be rejected.

**F.** **Even If South Dakota Law On Wrongful Death Claims Applies, Union's Cross Suits Exclusion Still Bars Coverage.**

In any event, a wrongful death claim brought by the heirs and next of kin under South Dakota law is not materially different from a wrongful death claim brought under Minnesota's wrongful death statute. Minn. Stat. § 573.02 (allowing a wrongful death action "if the decedent might have maintained an action, had the decedent lived, for an injury caused by the wrongful act or omission" and stating that "[t]he recovery in the action is the amount the jury deems fair and just in reference to the pecuniary loss resulting from the death, and shall be for the exclusive benefit of the surviving spouse and next of kin"); SDCL § 21-5-7 ("In every action for wrongful death the jury may give such damages as they may think proportionate to the pecuniary injury resulting from such death to the persons respectively for whose benefit such action shall be brought"). Therefore, regardless which wrongful death statute applies, both claims are derived from and wholly dependent on the death of the decedent. There is no reason for this Court to determine that a wrongful death action brought under South Dakota law rather than Minnesota law is germane to the determination of whether Union's cross suits exclusion applies here.

Plaintiffs cite to two South Dakota cases, In Re Estate of Howe, 689 N.W.2d 22 (S.D. 2004) and Belding v. Black Hills & Ft. P.R. Co., 53 N.W.2d 750 (S.D. 1892), as somehow supportive of the notion that a claim under South Dakota's wrongful death statute is not a claim derived from the wrongful act committed against the deceased. (Plaintiffs' Brief, Doc. no. 43 at p. 11). Both cases discuss the fact that a wrongful death claim can seek damages for pecuniary loss, which Union does not deny. The cases do not stand for the proposition, however, that a

wrongful death claim is not derived from the death of an individual – nor could they. Without the death of an individual, a wrongful death claim could never exist.

Significantly, when confronted with whether the term "death" encompasses wrongful death claims brought by the heirs of a decedent, the South Dakota Supreme Court has concluded that it does. In Gloe v. Iowa Mut. Ins. Co., the Court construed the term "death" as found in South Dakota's UM/UIM statutes to include wrongful death claims brought by the heirs of the decedent insured. 694 N.W.2d 238, 246 (S.D. 2005). In doing so, the Court expressly rejected the argument that the word "death" did not include wrongful death claims by the heirs. Id. Similarly, in the instant case, the word "death" as found in Union's definition of "bodily injury" should be construed to bar coverage for wrongful death claims brought by the heirs.

In accordance with the plain meaning of the cross suits exclusion and case law in South Dakota, Minnesota and several other jurisdictions, this Court should determine the cross suits exclusion bars coverage for the wrongful death claim.

## II.   THE HOUSEHOLD DROP-DOWN EXCLUSION APPLIES TO BAR COVERAGE UNDER THE UNION POLICY.

As set forth above and in Union's motion for summary judgment, if this Court concludes that the American Family policy constitutes proper "underlying insurance" then it is Union's position that the American Family household drop-down exclusion is deemed incorporated into the Union excess auto coverage through Union's follow-form provision.[5]  Because the 8th Circuit previously determined in Babinski v. American Family that the American Family household drop-down exclusion bars liability coverage in excess of $30,000 relative to the wrongful death claim, the Union policy, through incorporation of the same exclusion, would also

---

[5] Plaintiffs do not dispute that Union's excess auto coverage follows form to the "underlying insurance."

not provide coverage above $30,000.  As a result of the $30,000 in coverage already paid by American Family, Union's policy therefore does not provide any excess auto coverage.

A.     **The 8th Circuit Ruled That The Exclusion Applied To The Wrongful Death Claim Brought By Kathi Babinski's Heirs And Next Of Kin.**

In an effort to avoid to the binding effect of the 8th Circuit's decision in <u>Babinski v. American Family</u>, plaintiffs disingenuously argue in their Motion that the 8th Circuit's decision is not relevant because it did not "consider whether the [household exclusion] applied to any particular facts" and thus does not apply to the wrongful death claim.  (Plaintiffs' brief, Doc. no. 43 at p. 12).  This Court need not look any further than the express language of plaintiffs' complaint filed in the Minnesota district court action to determine that this argument is completely devoid of any merit.  Plaintiffs' complaint in that case expressly sought coverage of up to $1,000,000 from the American Family policy relative to the wrongful death claim made by "Kathi Babinski's heirs."

Plaintiffs' argument is further belied by the 8th Circuit decision which is replete with discussion of the heirs' wrongful death claim and lawsuit.  The 8th Circuit also expressly stated that Donald Babinski filed the action seeking a declaratory judgment that the automobile insurance policy he purchased from American Family Insurance Group provided up to $1,000,000 in liability coverage in a wrongful death suit brought against the estate of his son, John Babinski.

Finally, the settlement agreement in the wrongful death action establishes that the parties to the settlement (which included American Family) believed that the 8th Circuit's decision governed the coverage available under the American Family policy relative to the wrongful death lawsuit brought by Kathi Babinski's heirs and next of kin.

Plaintiffs also go so far as to argue, inconsistently, that the Minnesota lawsuit "contemplated" whether there was insurance coverage for a lawsuit brought by the estate of Kathi Babinski and not the heirs of Kathi Babinski. (Doc. no. 42 at p. 12) (emphasis added). Plaintiffs cite to absolutely no evidence in support of this allegation.[6] This argument also flies in the face of the plaintiffs' complaint in that action which sought coverage for a claim made by the "Kathi Babinski's heirs."

Accordingly, there is no record evidence which supports plaintiffs' argument that the 8th Circuit did not determine whether the household drop-down exclusion applied to the wrongful death claim brought by Kathi Babinski's heirs and next of kin.

**B.    Under Both Minnesota And South Dakota Law, The Doctrine of Collateral Estoppel Bars Plaintiffs from Relitigating The Enforceability and Applicability Of The Household Drop-down Exclusion In This Case.**

As detailed in Union's motion for summary judgment,[7] well-established estoppel principles bar plaintiffs from relitigating the issue of whether the household drop-down exclusion bars coverage above $30,000 relative to the wrongful death claim. Collateral estoppel "precludes parties to an action from relitigating in subsequent actions issues that were determined in the prior action." In re Village of Byron, 255 N.W.2d 226, 228 (Minn. 1977).[8] In other words, collateral estoppel stands for the principle of issue preclusion. Hauschildt v.

---

[6] Indeed, a lawsuit was never brought by the estate of Kathi Babinski, which is not surprising as she died instantly.

[7] Union's res judicata, collateral estoppel and judicial estoppel arguments are substantially the same arguments previously briefed in Union's motion for summary judgment on file with this court. (Doc. no. 39 at pp. 21-26).

[8] In the 8th Circuit, the preclusive effect of the first forum's decision is governed by the first forum's state law and not by the law of the second forum's state law where, as here, the prior judgment was in a diversity case. Hillary v. Trans World Airlines, 123 F.3d 1041 (8th Cir.1997), cert. denied, 522 U.S. 1090, 118 S.Ct. 881, 139 L.Ed.2d 870 (1998). Larsen v. Mayo Foundation, 21 Fed. Appx. 516, 517 (8th Cir. 2001) (finding state law to apply to preclusive effect accorded prior judgment issued by a federal court sitting in diversity); Lyons v. Anderson, 123 F.Supp.2d 485, 491 (N.D.Iowa 2000) (citing Hillary, and ultimately applying state law to determine preclusive effect of relevant prior judgment by federal court sitting in diversity). Accordingly, Minnesota law governs whether res judicata or

Beckingham, 686 N.W.2d 829, 837 (Minn. 2004).   The purpose of collateral estoppel is to prevent needless consideration of matters decided in earlier litigation.   Gulbranson v. Gulbranson, 408 N.W.2d 216, 217 (Minn. App. 1987).

Collateral estoppel applies if the following four elements are satisfied:

(1)   the issue is identical to the issue in the prior matter;

(2)   there was a final judgment on the merits in the prior matter;

(3)   the estopped party was a party to or in privity with a party to the prior matter; and

(4)   the estopped party was given a full and fair opportunity in the prior proceeding to be heard on the adjudicated issue.

Id.

All elements of the four-part test are met.   Relative to element (1), the first coverage action brought by plaintiffs which led to the 8th Circuit Court of Appeals decision in Babinski v. American Family Insurance Group, 569 F.3d 349 (8th Cir. 2009) sought insurance coverage for the same wrongful death claim brought by Kathi Babinski's heirs and next of kin.   The central issue in that case involved whether the household drop-down exclusion barred coverage over the minimum statutory limits.   Here, the issue raised in plaintiffs' motion is whether the household exclusion bars coverage under the Union policy for the wrongful death claim brought by Kathi Babinski's heirs and next of kin.   Element (1) is met.

There was also a final judgment on the merits.   The 8th Circuit remanded the case to the district court to enter judgment in favor of American Family consistent with the 8th Circuit decision.   Judgment was entered by the district court.   Element (2) is met.

---

collateral estoppel bars plaintiffs from relitigating the applicability of the household drop-down exclusion in this case.

Regarding element (3), the same plaintiff, Donald Babinski (individually and as personal representative of the estate of John Babinski), in this action was also a plaintiff in the first coverage action.   While plaintiff Babinski Properties was not named as a plaintiff in the first coverage action it is in privity with Donald Babinski who is the owner of Babinski Properties. "An individual who has full ownership of a corporation and is in complete control of its affairs is presumed to have a sufficient common interest to be in privity with the corporation." SMA Services, Inc. v. Weaver, 632 N.W.2d 770 (Minn. App. 2001)(citing In re Gottheiner, 703 F.2d 1136, 1140 (9th Cir. 1983)).  Element (3) is met.

With regard to element (4), plaintiffs were given a full and fair opportunity in the first coverage action to be heard on the issue regarding the applicability of the household drop-down exclusion.   Indeed, it was the central issue in the case and was fully briefed to the 8th Circuit Court of Appeals.   Element (4) is met.   Collateral estoppel applies to bar plaintiffs from re-litigating the household drop-down exclusion in this case.

South Dakota applies a similar four-part test to determine whether collateral estoppel bars relitigation of an issue involved in an earlier suit.   The South Dakota Supreme Court has held that the following elements must be met before the doctrine of collateral estoppel may be applied: (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? (4) Did the party against whom the plea is asserted have a full and fair opportunity to litigate the issue in the prior adjudication?  Staab v. Cameron, 351 N.W.2d 463, 465 (S.D. 1984)(citing Cook v. Rezek, 296 N.W.2d 731 (S.D. 1980)).

With regard to the third test, South Dakota case law has stated that the doctrine may be applied in a civil action when a new defendant affirmatively raises this defense to bar a plaintiff from reasserting issues the plaintiff has actually previously litigated and lost on the merits against another defendant. Staab, 351 N.W.2d at 465 (citing Black Hills Jewelry Mfg. v. Felco Jewel Ind., 336 N.W.2d 153 (S.D. 1983)). Once these tests have been met, collateral estoppel bars relitigation of an essential fact or issue involved in the earlier suit. Id. (citing Melbourn v. Benham, 292 N.W.2d 335 (S.D. 1980)).

There is no conflict between Minnesota or South Dakota law on the critical issue of collateral estoppel. Plaintiffs are collaterally estopped from relitigating the household drop-down exclusion in this case. As a result, there is no coverage available under Union's policy because coverage is barred above $30,000 by the household drop-down exclusion.

### C.    The Doctrine Of Res Judicata Also Bars Relitigation Of The Household Drop-Down Exclusion Under Both Minnesota And South Dakota Law.

Fundamental to the doctrine of res judicata "is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies...." Hauschildt v. Beckingham, 686 N.W.2d 829, 837 (Minn. 2004)(quotations omitted). Res judicata applies to all claims litigated and to all claims that could have been litigated in the earlier action; "a party is required to assert all alternative theories of recovery in the initial action." Id. at 840 (quotations omitted).

Res judicata applies as an absolute bar to a subsequent claim when (1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter. Id.

Similar to Minnesota law, the doctrine of res judicata under South Dakota serves as claim preclusion to prevent relitigation of an issue actually litigated or which could have been properly raised and determined in a prior action. Barnes v. Matzner, 661 N.W.2d 372, 377 (S.D. 2003) (quoting Black Hills Jewelry Mfg. v. Felco Jewel Ind., 336 N.W.2d 153, 157 (S.D. 1983)) (emphasis in the original). South Dakota applies four factors in determining whether res judicata is applicable: (1) Whether the issue decided in the former adjudication is identical to the present issue; (2) whether there was a final judgment on the merits; (3) whether the parties in the two actions are the same or in privity; and (4) whether there was a full and fair opportunity to litigate the issues in the prior adjudication. Springer v. Black, 520 N.W.2d 77 (S.D. 1994)(citing Raschke v. DeGraff, 81 S.D. 291, 295, 134 N.W.2d 294, 296 (1965)).

Like collateral estoppel, res judicata can be applied defensively by a new defendant in the second action. Id. at 79. The doctrine of res judicata applies to bar re-litigation of the effect of the household drop-down exclusion for the same reasons collateral estoppel applies as detailed above.

### D.   Judicial Estoppel Bars Plaintiffs From Arguing That South Dakota Law Applies To The Interpretation Of The Household Drop-down Exclusion.

If this Court determines that res judicata and collateral estoppel do not apply to bar relitigation of the applicability of the household drop-down exclusion by plaintiffs, the Court must construe the exclusion under Minnesota law based on the principles of judicial estoppel. Under South Dakota law, the following elements are considered in deciding whether to apply judicial estoppel:

> [T]he later position must be clearly inconsistent with the earlier one; the earlier position was judicially accepted, creating the risk of inconsistent legal determinations; and the party taking the inconsistent position would derive an unfair advantage or impose an unfair detriment to the opponent if not estopped.

Canyon Lake Park, L.L.C. v. Loftus Dental, P.C., 700 N.W.2d 729, 737 (S.D. 2005) (quoting Watertown Concrete Prod., Inc. v. Foster, 630 N.W.2d 108, 112-13 (S.D. 2001) (citing New Hampshire v. Maine, 532 U.S. 742, 750, 121 S.Ct. 1808, 1814-15, 149 L.Ed.2d 968, 977)) (additional citations omitted).

Plaintiffs expressly took the position in the first coverage action that Minnesota law applied to the interpretation of the exclusion. Plaintiffs' appellate brief filed with the 8th Circuit stated that it was undisputed that Minnesota law applied. In reliance on the parties' stipulation, the 8th Circuit applied Minnesota law to its analysis of the exclusion. The Court should find that judicial estoppel mandates that Minnesota law apply to the exclusion. Following the 8th Circuit Court of Appeals decision, which applied Minnesota law, the household drop-down exclusion applies to bar coverage above $30,000 relative to the wrongful death claim.

## CONCLUSION

If this Court were to adopt plaintiffs' flawed interpretation of the cross suits exclusion, it would effectively render several primary automobile liability policies, including the primary American Family policy at issue in this case, inapplicable to wrongful death claims brought by the heirs and next of kin which were the result of the wrongful acts of an insured.

The primary American Family auto policy at issue in this case provides coverage for "compensatory damages an Insured person is legally liable for because of bodily injury and property damage due to the use of a car or utility trailer." The American Family policy, like most primary automobile insurance policies, defines the term "bodily injury" to mean "bodily injury to or sickness, disease or death of any person." Under plaintiffs' interpretation, there would be no coverage under the American Family policy because the wrongful death claim is not

a claim for bodily injury to the decedent.   This is nonsensical and runs contrary to basic automobile liability law.

This Court should reject plaintiffs' flawed interpretation of the cross suits exclusion and mischaracterization of the 8th Circuit's decision which held that the household drop-down exclusion applied to the wrongful death claim brought by the heirs and next of kin of Kathi Babinski.  For the reasons discussed herein, Union Insurance Company respectfully requests that this Court deny plaintiffs' motion for partial summary judgment.   Union also requests that this Court grant its motion for summary judgment, dismiss plaintiffs' complaint with prejudice, and declare that there is no insurance coverage available under the Union policy for the wrongful death claim brought by Kathi Babinski's heirs and next of kin.

Dated:  February 8, 2011

By: s/Paul Linde
Michael J. Schaffer
Paul Linde
SCHAFFER LAW OFFICE, PROF. LLC
412 West 9th Street, Suite 1
Sioux Falls  SD  57104-3602
Telephone:  (605) 274-6760
Fax:   (605) 274-6764
mikes@schafferlawoffice.com
paull@schafferlawoffice.com

and

Bethany K. Culp, MN Reg. No. 154891
(pro hac vice)
Michelle D. Mitchell, MN Reg. No. 295978
(pro hac vice)
HINSHAW & CULBERTSON LLP
333 South Seventh Street, Suite 2000
Minneapolis, MN 55402
Telephone:  612-333-3434
Fax:  612-334-8888
bculp@hinshawlaw.com
mmitchell@hinshawlaw.com
ATTORNEYS FOR DEFENDANT UNION
INSURANCE COMPANY

## CERTIFICATE OF COMPLIANCE

Paul Linde, pursuant to D.S.D. Civ. L.R. 7.1(B)(1), certifies that the foregoing Legal Memorandum contains a total of 9625 words and is in compliance with the type volume limitation set forth in D.S.D. Civ. L.R. 7.1 (B)(1). I further state I have relied on the word count feature provided by Microsoft Word.

*s/Paul Linde*