UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BABINSKI PROPERTIES, and DONALD BABINSKI, Personally and as Executor of the Estate of John Babinski,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>UNION INSURANCE COMPANY,<br><br>　　　　Defendant. | CIV. 09-4192-KES<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

Plaintiffs, Babinski Properties and Donald Babinski, brought suit against defendant, Union Insurance Company, seeking indemnification under Union's umbrella policy held by Babinski Properties for money Donald paid to settle a wrongful death suit brought against his son's estate. Union moves for summary judgment. Plaintiffs resist and move for partial summary judgment, which Union resists. Union's motion is granted and plaintiffs' motion is denied.

**BACKGROUND**

The facts pertinent to this order are as follows: Union issued a commercial insurance umbrella policy to Babinski Properties on November 16, 2006. Donald, a South Dakota resident, owns Babinski Properties, which is located in Sioux Falls, South Dakota.

On December 10, 2006, Donald's son, John Babinski, and John's wife, Kathi Babinski, were involved in a single-car accident in Minnesota.[1] At the time of the accident, John and Kathi, Minnesota residents, resided together in the same household. On the night of the accident, John drove a 2004 Minnesota-registered truck insured by American Family Insurance Group and owned by Janice Estates, a company owned by Donald. Kathi was in the passenger seat. Kathi and John died in the accident.

John's estate notified American Family that Kathi's heirs intended to bring a wrongful death suit against the estate. In June of 2007, Donald, as the administrator of John's estate, filed a declaratory judgment action in the District of Minnesota against American Family to determine the amount of available coverage to defend Kathi's heirs' lawsuit. *Babinski v. Am. Family Ins. Group*, 569 F.3d 349 (8th Cir. 2009) (*Babinski I*). American Family had issued a personal automobile insurance policy to Donald, which provided primary liability coverage for the vehicle driven by John at the time of the accident. Donald argued that the policy provided $1,000,000 in liability coverage and American Family responded that the household drop-down exclusion (household exclusion) limited coverage to $30,000, Minnesota's minimum liability coverage.

---

[1] Due to the similarity of names, Babinski Properties and Donald Babinski will collectively be called plaintiffs in this action whenever possible. When discussing the wrongful death suit, the court will refer to John Babinski and Kathi Babinski by their first names.

After Donald filed the declaratory judgment action, Kathi's heirs filed a wrongful death suit in state court in Hennepin County, Minnesota, against Donald as the administrator of John's estate. Kathi's heirs alleged that John's negligence caused the accident and Kathi's death. The heirs sought damages for their own pecuniary loss stemming from Kathi's death.

In *Babinski I*, the issue was whether American Family's household exclusion applied. The district court found that the household exclusion was ambiguous and vague and, thus, invalid. The Eighth Circuit reversed and found that the household exclusion was neither ambiguous nor vague and that the household exclusion was enforceable under Minnesota law. *See Babinski I*, 569 F.3d at 353. The household exclusion was only enforceable to the extent that it did not limit coverage below $30,000, the minimum amount required by Minnesota law. *Id.*

Before the Eighth Circuit returned its opinion in *Babinski I*, the state court wrongful death action settled on December 16, 2008, for $650,000 in favor of Kathi's heirs. At all relevant times, Babinski Proprieties was covered under the Union umbrella policy. When Union refused to indemnify plaintiffs for the losses and expenses involved in settling the wrongful death action, plaintiffs filed this lawsuit for indemnification in South Dakota state court. Union removed the action to this court on diversity grounds.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Only disputes over facts that might affect the outcome of the case will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court views the facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal citation omitted). The nonmoving party also receives "the benefit of all reasonable inferences to be drawn from the underlying facts" in the record. *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

## DISCUSSION

### I.    Union's Motion

Union argues that the American Family policy is not listed as underlying insurance in Union's umbrella policy, and, thus, Union need not indemnify plaintiffs. Plaintiffs respond that the American Family policy qualifies as underlying insurance.

4

### A.     The Declarations Page Is Unambiguous

This case involves an interpretation of contract language. It is uncontested that South Dakota law applies to the Union policy. Interpreting contract language is a matter of law. *Canal Ins. Co. v. Abraham*, 598 N.W.2d 512, 515 (S.D. 1999). In interpreting a contract, the court must "examine the contract as a whole and give words their 'plain and ordinary meaning.' " *Gloe v. Union Ins. Co.*, 694 N.W.2d 252, 260 (S.D. 2005) (quoting *Elrod v. Gen. Cas. Co. of Wis.*, 566 N.W.2d 482, 486 (S.D. 1997)).

> The underlying insurance provision in the Union policy states:
>
> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
>
> AUTOMOBILE LIABILITY - FOLLOWING FORM
>
> Except insofar as coverage is available to the insured in the underlying insurance, this policy does not apply to bodily injury or property damage arising out of the ownership, maintenance, operations, use, loading or unloading or entrustment to others of any auto.

Docket 36-2 at 2. The policy defines "underlying insurance" as:

> T. Underlying insurance means the insurance policies listed as Underlying Insurance, in the Declarations which provide the coverage and limits stated. It includes any policies issued to renew or replace those policies during the term of this insurance that provide:
>
>   1.   At least the same limits of insurance; and
>
>   2.   At least the same coverage.
>
> The coverage and limits stated in the Declarations for Underlying Insurance, and any renewals or replacements thereof, apply whether or not such is collectible.

5

Docket 36-1 at 35.

The meaning of this language is clear. For the American Family policy to qualify as underlying insurance for Union's umbrella policy, the American Family policy must either be listed as underlying insurance or have replaced a policy listed on the underlying insurance. The South Dakota Supreme Court, when presented with similar policy language, found a similar "following form" provision to be unambiguous. *See North Star Mut. Ins. Co. v. Rasmussen*, 734 N.W.2d 352, 359 (S.D. 2007) (reasoning that "it would be an absurd interpretation to hold 'Declarations' to mean the declaration page on any underlying insurance policy the insured may own. . . . The umbrella policy clearly required that the underlying policies covered by the umbrella policy be listed in the 'Declarations' within the umbrella policy itself."). See also *Evins v. La. Farm Bureau Mut. Ins. Co.*, 907 So. 2d 733, 736 (La. Ct. App. 2005) ("[S]ince the umbrella policy only provides coverage for damages sustained in excess of the policies listed on the schedule of underlying insurance, and the [contested] policy is not listed on the schedule of underlying insurance, there is no coverage under the umbrella policy . . . ."); *Am. Res. Ins. Co. v. H & H Stephens Constr., Inc.*, 939 So. 2d 868, 874 (Ala. 2006) ("Because the [contested] policy is not a policy 'designated in Item 7 of the Declarations' section of the umbrella policy, the umbrella policy does not apply . . . ."). Thus, the court will examine whether the American Family policy is either listed as underlying insurance on the Union policy or replaces an underlying policy listed on the Union policy.

6

### B. The American Family Policy

On the "Schedule of Underlying Insurance," the Union policy lists "Owners Insurance Company" as a business and hired auto policy with policy number "42 53891501," an effective date from November 16, 2006, to November 16, 2007, and a combined single limit of $1,000,000. Docket 36-1 at 13. But according to an ACORD Cancellation Request/Policy Release dated November 14, 2006, Babinski Properties canceled two Auto Owners Insurance policies, including policy number 42 53891501, effective as of November 16, 2006. Docket 37-12 at 1. Plaintiffs do not dispute that the Cancellation Request canceled the Owners policy that was listed on the Declarations page as underlying insurance.

Instead, plaintiffs contend that "[i]t is undisputed that the American Family Policy replaced the Auto Owners Policy which was listed on the Union Policy's declarations sheet." Docket 53 at 9. Union, however, disputes that the American Family policy replaced the Owners policy.

Union's policy includes a "Maintenance of Underlying Insurance" provision that requires plaintiffs to maintain underlying insurance and give "prompt written notice" if the underlying insurance is canceled or replaced. Docket 36-1 at 30-31. If the underlying insurance is replaced, plaintiffs must give notice of "[a]ny change in the limits or in the coverage of any underlying insurance . . . ." Docket 36-1 at 31; *see also* Docket 36-1 at 35 (stating that a replacement policy to an underlying insurance policy must "provide: (1) At least the same limits of insurance; and (2) At least the same coverage.").

7

There is no evidence that plaintiffs or the broker at Wingert Insurance Inc. notified Union in writing that the Owners policy was canceled or that the American Family policy was meant to replace the Owners policy as was required by the "Maintenance of Underlying Insurance" provision. Additionally, the American Family policy is a "South Dakota family car policy." Docket 37-2 at 5-7. The Owners policy is a "Business Auto" policy. Docket 36-1. Business and personal automobile insurance policies may have different coverages and exclusions. Because plaintiffs failed to give prompt written notice to Union of the cancellation and replacement of the Owners policy, the American Family policy does not qualify under the Union policy as a replacement policy for the Owners policy.

Plaintiffs contend that the Wingert broker knew that the American Family policy was meant to replace the Owners policy because the same Wingert broker obtained both the Union policy for Babinski Properties and the American Family policy for Donald. Plaintiffs argue that because the Wingert broker was Union's agent, Union had actual or apparent knowledge that the American Family policy replaced the Owners policy. Plaintiffs further argue that "Union Policy's declaration page was not updated to reflect the correct underlying insurance . . . because of Union's agent's oversight, and through no fault of the Plaintiffs." Docket 53 at 9-10. Union denies that the Wingert broker was its agent.

8

Agency is a creature of state law and, in South Dakota, is governed by both statutory and common law. *Rasmussen*, 734 N.W.2d at 360. Agency is determined on a case-by-case basis. *Id.* at 363 (" '[W]hether an insurance broker is the agent of the insurer or of the insured depends on the facts of the particular case.' " (quoting *Electro Battery Mfg., Co. v. Commercial Union Ins. Co.*, 762 F. Supp. 844, 848 (E.D. Mo. 1991))). "Thus, the determination of whether a person is an agent would typically be a question for a fact finder." *Id.* (citing *Rumpza v. Larsen*, 551 N.W.2d 810, 815 (S.D. 1996)). But if the relevant facts are not in dispute, then an agency relationship can be determined as a matter of law. *Id.* (citing *Damon's Mo., Inc. v. Davis*, 590 N.E.2d 254, 260 (Ohio 1992); *Dodds v. Hanover Ins. Co.*, 880 S.W.2d 311, 313 (Ark. 1994)).

South Dakota defines an agency relationship as "the representation of one called the principal by another called the agent in dealing with third persons." SDCL 59-1-1. "An agency relationship is either actual or ostensible." *Kasselder v. Kapperman*, 316 N.W.2d 628, 630 (S.D. 1982); *see also Dahl v. Sittner*, 429 N.W.2d 458, 462 (S.D. 1988) (reasoning that "[a]n agent's authority, like the agency relationship itself, can be either actual or ostensible."). The burden of proof is on the party claiming that an agency relationship exists. *Kasselder*, 316 N.W.2d at 630 (citations omitted). In determining whether an agency relationship exists, the court examines "the relations of the parties as they exist under their agreement or acts." *Id.*

9

"Actual agency exists if the relationship is expressly created by an agreement whereby the principal appoints his agent who agrees to serve in that capacity." *Dahl*, 429 N.W.2d at 462 (citing SDCL 59-1-4). Actual agency requires proof of certain factual elements: " 'The manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking, and the understanding of the parties that the principal is to be in control of the undertaking.' " *Kasselder*, 316 N.W.2d at 630 (quoting *Watkins Co. v. Dutt*, 173 N.W.2d 41, 43 (1969)).

Ostensible agency occurs "when by conduct or want of ordinary care the principal causes a third person to believe another, who is not actually appointed, to be his agent." SDCL 59-1-5. To establish ostensible agency, the evidence should indicate that the principal, by its representations or actions, caused a third party to believe that a person was its agent. *See Kasselder*, 316 N.W.2d at 630 (reasoning that "[o]stensible agency for which a principal may be held liable must be traceable to the principal and cannot be established solely by the acts, declarations or conduct of an agent." (citations omitted)).

The only evidence before the court on whether an agency relationship existed between the Wingert broker and Union is an affidavit from Jane Novotny, a Regional Sales Manager for Continental Western Group, of which Union is an affiliate, stating that the Wingert broker was **not** Union's agent: "Between 1997 to current, Union Insurance Company never entered into an

10

agency agreement with Wingert Insurance." Docket 34 at ¶ 8. In its statement of undisputed material facts, Union cited the Novotny affidavit for the statement that "[f]rom 1997 to current, Union never had an agency agreement with Wingert Insurance. (Novotny Aff.)." Docket 38 at ¶ 57. Plaintiffs responded to this statement without citation to any evidence: "Objection to the extent the statement implies that no agent-principal relationship existed, without regard to any other agreement or filing, or lack thereof." Docket 54 at ¶ 57. Plaintiffs have offered no facts to counter the Novotny affidavit.

Moreover, there are no filings with the South Dakota Insurance Commission stating that the Wingert Insurance broker was Union's agent. SDCL 58-30-175 states that an individual is an insurance company's agent if the company appointed the person as its agent, and SDCL 58-30-176 requires an individual to file a notice of appointment with the state in order to be an insurance company's agent. Beyond plaintiffs' bare assertion of the basic agency rule and a statement that the court should view the facts in the light most favorable to them, plaintiffs neither dispute the facts on agency as offered by Union nor offer any contrary facts. The court has read the entire record and has found ***no facts*** indicating that the Wingert broker was Union's agent.

In response to a summary judgment motion, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but must set

forth specific facts by affidavits or otherwise showing that a genuine issue of material fact exists. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002) (citing *Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1107 (8th Cir. 1998)); *see also Rasmussen*, 734 N.W.2d at 356 ("[W]e determine whether the moving party has demonstrated the absence of any genuine issues of material fact and showed entitlement to judgment on the merits as a matter of law.").

Plaintiffs allege that the Wingert broker is Union's agent, but the only facts concerning the existence of an agency relationship are that the Wingert broker solicited policies on behalf of Union. In *North Star Mutual Insurance Co. v. Rasmussen*, 734 N.W.2d 352 (S.D. 2007), the South Dakota Supreme Court held that a broker who solicited policies on behalf of multiple insurance companies was an agent of the insured, not the insurer. *Id.* at 363. The court reasoned that " 'whether an insurance broker is the agent of the insurer or the insured depends on the facts of the particular case.' " *Id.* (quoting *Electro Battery*, 762 F. Supp. at 848). While this determination is usually for the fact-finder, if the relevant facts are not disputed, then the court can determine, as a matter of law, whether the broker is the insurance company's agent. *Id.* (citations omitted).

In *North Star Mutual*, there was no dispute that the insurance broker solicited insurance policies for several insurance companies. *Id.* When the insured called the broker to inquire about an umbrella insurance policy for a

recent purchase, he asked the broker "to examine all possible sources of coverage and to procure insurance." *Id.* The broker was free to negotiate with multiple insurance companies and was not restricted to choose a specific insurance policy. *Id.* Additionally, the broker never had actual authority to bind the insurance company to an umbrella policy. *Id.* Based on these facts, the South Dakota Supreme Court determined that the broker was not the insurance company's agent. *Id.*

The facts here are similar. The Wingert broker appears to have had the ability to solicit policies from multiple insurance companies on behalf of plaintiffs. Plaintiffs had multiple insurance policies from varying companies. *See* Docket 36-1 at 13-14 (stating that the umbrella policy covered policies from Union Insurance Company, Owners Insurance Company, American Family Insurance Company, Westport Insurance Corporation, and State Farm Insurance Company). There is no evidence that the Wingert broker was limited in offering only the Union umbrella policy to plaintiffs.

Additionally, plaintiffs have offered neither an agreement between Union and the Wingert broker that would establish an actual agency relationship nor evidence of Union's words or actions that would demonstrate that an actual agency relationship existed. Plaintiffs also have offered no evidence that Union through either its conduct or want of ordinary care caused plaintiffs to believe that the Wingert broker was Union's agent.

Thus, plaintiffs have not proven the existence of either an ostensible or actual agency relationship between the Wingert broker and Union.

The uncontested facts show that plaintiffs canceled the Owners policy, and never gave Union written notice that the American Family policy was a replacement policy for the Owners policy. Further, plaintiffs failed to prove that an agency relationship existed between the Wingert broker and Union, so even if plaintiffs or the Wingert broker replaced the American Family policy for the Owners policy, Union had no knowledge of the replacement. Without an agency relationship, a replacement cannot be imputed to Union. Because no genuine issues of material fact exist on whether the American Family insurance policy was listed on the underlying insurance Declarations page of the Union policy, summary judgment is granted to Union.

## II.   **Plaintiffs' Motion**

Plaintiffs move for partial summary judgment on Union's counterclaim for declaratory judgment. In the counterclaim, Union contends that due to the umbrella policy's "cross suits" provision, Union is entitled to a declaration that it has no obligation to defend or indemnify plaintiffs against Kathi's heirs' wrongful death action. The court need not address plaintiffs' partial summary judgment motion because Union's umbrella policy did not extend to the American Family policy, and, thus, the applicability of the "cross suits" provision is irrelevant.

**CONCLUSION**

Union moves for summary judgment on all of plaintiffs' claims. Summary judgment is appropriate because, as a matter of law, the American Family policy does not constitute underlying insurance for the Union policy. Plaintiffs move for partial summary judgment on Union's counterclaim. Because Union's umbrella policy does not extend to the American Family policy, plaintiffs' motion is denied. Accordingly, it is

ORDERED that plaintiffs' motion for partial summary judgment (Docket 45) is denied, and defendant's motion for summary judgment (Docket 33) is granted. Judgment will be entered in favor of defendant.

Dated June 13, 2011.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE